**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

RICHARD C. JOHNSON,

Plaintiff,

v.

DANA CORPORATION, and WIX-NAPA, a division of DANA CORPORATION,

Defendants.

Civil No. 00-38 DSD/AJB)

**REPORT AND RECOMMENDATION**

---

## I. INTRODUCTION

Plaintiff brings this age discrimination action against Defendant Dana Corporation ("Dana") and Wix-Napa, a division of Dana. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367. This matter came before the undersigned United States Magistrate Judge pursuant to an assignment, made in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1, upon defendant Dana Corporation's ("Dana") Motion to Transfer. Oral arguments were held on July 5, 2000, at which time Matthew Klein appeared on behalf of Dana and Stephen C. Fiebiger appeared on behalf of Plaintiff, Richard C. Johnson. For reasons that follow, it is recommended that Dana's Motion to Transfer be denied.

## II. FACTUAL AND PROCEDURAL SUMMARY

Dana describes itself as a Virginia Corporation, having a principal place of business in Ohio, and engaging in the manufacture and sale of automotive products through wholly-owned divisions (one being, the Wix Division). Plaintiff, a citizen of Minnesota, was employed in



FILED JUL 14 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Dana's Automotive Sales Division, as a district sales manager, beginning in 1989. In 1997, due to an alleged reduction in workforce, many district sales manager positions were eliminated, including Plaintiff's position. Dana organized a "job fair" in Ohio, where the soon-to-be-unemployed district sales managers could come to interview for other positions in the Dana organization. Plaintiff attended the "job fair," applied for a position and was turned down. Thereafter, Plaintiff filed an age discrimination charge with the Equal Employment Opportunity Commission (EEOC) and cross-filed with the Minnesota Department of Human Rights. After an investigation, the EEOC issued Plaintiff a "right to sue" letter. This lawsuit followed. Plaintiff alleges violations of MINN. STAT. § 181.81 *et seq.*, the Minnesota Human Rights Act, MINN. STAT. § 363.03 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Dana now moves the Court to transfer this case to the Western District of North Carolina.

## III. DISCUSSION

A. General Standard for Transfer

"[A] district court may transfer any civil action to any other district or division" if the action could have been originally brought in the other district or division and such a transfer, relative to the plaintiff's choice of forum, would provide for (1) the convenience of the parties, (2) the convenience of the nonparty witnesses and (3) the interests of justice. 28 U.S.C. § 1404(a); see also Graff v. Qwest Communications Corp., 33 F.Supp.2d 1117, 1120-21 (D. Minn. 1999) (citations omitted). A court's analysis must begin with the presumption that the action should remain in plaintiff's choice of forum, especially when the plaintiff resides there. Id. at 1121 (citing Christensen Hatch Farms, Inc. v. Peavey Co., 505 F.Supp. 903, 911 (D. Minn. 1981)). The moving party bears the burden to show that, in the balance, the factors *strongly*

favor transfer; a transfer should be denied if the factors weigh only slightly in favor of the movant. Id. (citations omitted).

B. Whether Case Could Have Been Brought in the Western District of North Carolina

The threshold issue in a motion to transfer is whether a plaintiff's action could have been brought in the proposed district or division. Brockman v. Sun Valley Resorts, Inc., 923 F.Supp. 1176, 1179-80 (D. Minn. 1996). Dana asserts that this case could have been brought in the Western District of North Carolina and Plaintiff, completely silent on the issue, apparently concedes the point. Thus, the Court will proceed with the remainder of the analysis.

C. The Convenience of the Parties

Transfer is not favored where the transfer merely shifts the inconvenience from one party to the other. Graff, 33 F.Supp.2d at 1121 (citing Van Dusen v. Barrack, 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). Dana acknowledges this principle, but asserts that the convenience to it, as a result of a transfer, "far outweighs" the inconvenience to Plaintiff. In support of this assertion, Dana offers (1) the location of its key witnesses, (2) the location of the Wix Division headquarters and (3) the location of the documents relevant to Plaintiff's case. The Court will address each in turn.

First, the Court accepts the assertion that Dana's key witnesses are in North Carolina. However, no specificity is offered as to how Dana, in their role as a party, will be inconvenienced by the location of these two witnesses and so, the Court is left to speculate. First, Dana is not concerned that these witnesses will be traveling outside North Carolina for a deposition conducted by Plaintiff. Next, Dana mentions, in passing, convenience to its counsel,

however, it is the convenience to the parties, not their counsel, that the Court is concerned with.[1] Nelson v. Soo Line R. Co., 58 F.Supp.2d 1023, 1027 (D. Minn. 1999) (citing Hoppe v. G.D. Searle & Co., 683 F.Supp. 1271, 1276 (D. Minn. 1988)); see also Greyhound Computer Corp. v. IBM Corp., 342 F.Supp. 1143, 1146 (D. Minn. 1976).

The Court is left to presume that Dana is concerned with travel accompanying future litigation. This is a valid concern, but it is also a valid concern for Plaintiff. Even if the Court disregards the alleged inconvenience to Plaintiff stemming from his proposed witnesses (as Dana argues it should), the Court is still faced with a plaintiff in Minnesota and two key witnesses in North Carolina. Although Dana wins 2-1, it is hardly the victory needed to overcome the presumption favoring Plaintiff's choice of forum. Moreover, Dana acknowledges, as discussed below, that it is more capable of financing distant litigation than is Plaintiff.

Next, Dana points out, without explanation, that its Wix Division is headquartered in North Carolina. Dana fails to show how this matters. A corporation, as an abstract entity, experiences nothing, including convenience. The Court is concerned with convenience (or lack thereof) in terms of people, time, money, etc. Dana comes close by mentioning the convenience to its corporate representatives. However, Dana mentions them in passing only, not only leaving out their names but also leaving the Court to guess as to numbers, their location (Ohio or North Carolina) and the extent of their involvement in the case.

Lastly, the Court acknowledges that Dana has correctly cited support for the proposition

[1]The court is aware that Plaintiff mentioned concern over the incovenience relating to retaining counsel in North Carolina. Using the same authority as cited in the text, the Court disregards Plaintiff's concern.

that the location of documentary evidence is a proper factor to consider on a motion to transfer. See Guenther v. Cooper Life Sciences, Inc., Civ. No. 4-88-503, 1988 WL 131340, at *2 (D. Minn. Dec. 5, 1988) (citation omitted); see also Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 655 (11th Cir. 1993). The challenge facing Dana is that they must show where the documents are located and why the documents are important. Standard Office Systems of Fort Smith, Arkansas v. Ricoh Corp., 742 F.Supp. 534, 538 (W.D. Ark. 1990) (citation omitted). Dana has not done so. First, Mr. Zorn's affidavit does not specify the locations of the documents which Dana asks the Court to consider. The Court is left to guess between Ohio and North Carolina and with some of the documents, such as the personnel files of Plaintiff and Mr. Todd, the Court would guess "Ohio." After all, Dana has told the Court that Plaintiff and Mr. Todd worked for the Auto Sales Division, and that this division was headquartered in Ohio. As to the remaining documents enumerated in Mr. Zorn's affidavit, even if the Court guessed that they were located in North Carolina, Dana has failed to show their importance.

For the foregoing reasons, the Court concludes that Dana has failed to make a strong showing that the convenience to it, as a result of a transfer, "far outweighs" the inconvenience to Plaintiff.

D. The Convenience of the Witnesses

"The convenience of the witnesses is an important factor for the court since it determines the 'relative ease of access to sources of proof.'" Graff, 33 F.Supp.2d at 1121 ( citation omitted). As a preliminary matter, the parties agree that the convenience to non-party witnesses will not be affected by a transfer and so, the court will not address the matter.

As to other witnesses, Dana has identified Mr. Zorn, Mr. McColley "and other potential

employee witnesses." First, the court gives no weight to Dana's "other potential employee witnesses." See Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D. Minn. 1991) (citation omitted) ("[T]he party seeking transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.").

Next, as to Mr. Zorn and Mr. McColley, the parties expend significant energy discussing whether the Court has been sufficiently provided with a description of their proposed testimony and whether their testimony will be central to the claim. The Court need not reach these issues because, in any event, Mr. Zorn and Mr. McColley are *employee* witnesses, for whom the Court need not show as much concern. Gundle Lining Construction Corp. v. Fireman's Fund Insurance Company, 844 F.Supp. 1163, 1166 (S.D. Texas 1994) (citations omitted) ("It is the convenience of non-party witnesses, rather than employee witnesses, however, that is the more important factor and is accorded greater weight.").

As a final note concerning the convenience of witnesses, Dana correctly points out that Plaintiff has provided the Court with a sketchy discussion concerning the inconvenience to his witnesses as a result of a transfer. However, the burden in this matter belongs to Dana and the Court concludes that Dana has not made a strong showing on the convenience-of-witness factor.

E. The Interests of Justice

"The interests of justice factor is weighed very heavily." Graff, 33 F.Supp. at 1122 (citations omitted). Of all the considerations which may be relevant to this factor, Dana has chosen to address: (1) docket congestion, (2) the relative abilities of the parties to afford the costs of distant litigation, (3) the relative ability of the courts to address the law to be applied and (4) "public interest."

As an initial matter, Dana concedes that it could better afford the costs of distant litigation. Dana proceeds to explain that the incremental costs incurred by Plaintiff, as a result of a transfer, will be minimal. It follows, Dana's argument goes, that the Court should discount this consideration. Although Plaintiff offers little in rebuttal, the consideration still points in the direction of Minnesota, if only slightly.

As to docket congestion, the court has reviewed the 1999 docket statistics cited in Dana's reply memorandum and concludes that, although the numbers favor North Carolina, the disparities are not so overwhelming as to substantially affect the Court's decision. Brockman, 923 F.Supp. at 1182 ("[T]he minor docket difference is inconsequential, creating no significant threat of delay and concomitant additional expense in either forum.").

Next, Dana argues that transfer is "appropriate" in the interests of justice because both the Western District of North Carolina and the District of Minnesota are familiar with the law to be applied in this case. Dana correctly points out that all of the claims in this case would be analyzed under the familiar framework laid out in McDonnel Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See LeBlond v. Greenball Corp., 942 F.Supp. 1210, 1215 (D. Minn. 1996), Bevan v. Honeywell, Inc., 118 F.3d 603, 613 (8th Cir. 1997). Thus, the court has no basis to doubt that the Western District of North Carolina could adequately handle all the claims in this case. However, such a conclusion does not point towards either district.

Dana finishes their interests-of-justice discussion by arguing that public interests favor a transfer. The thrust of Dana's argument is that the State of Minnesota has less contacts with this case and less of an interest in its resolution. It follows, Dana's argument goes, that it would be unfair to service this case with Minnesota judicial resources and a Minnesota jury.

The Court acknowledges that Dana correctly cites authority for the proposition that jury duty should not be thrust upon persons of a state with no interest in the outcome of a case. See Brockman, 923 F.Supp. at 1182 (crediting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). However, the amorphous nature of an "interests" analysis prevents the Court from concluding which state (if any) has a greater interest. For example, this case could be viewed as one where a Minnesota man—who traveled to Ohio to participate in a job fair which was conducted by a foreign corporation—was denied employment and now alleges age discrimination.

However, this case could also be viewed as one where a foreign corporation, after establishing an approximately 7-year employment relationship with a Minnesota citizen, ended that relationship on a discriminatory basis. The first portrayal, but not the second, would lend itself to a conclusion that Minnesota has no interest in this case. The challenge facing Dana is that it has not convinced the Court that the first, and not the second, is the correct way to view the case.

The court concludes that, Dana has not made a *strong* showing that, in the balance, the factors strongly favor transfer.

## IV. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that Defendant Dana Corporation's Motion to Transfer [Docket No. 12] be denied.

Dated: 7/14/00

ARTHUR J. BOYLAN
United States Magistrate Judge

## V. NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within 10 days.